We'll hear argument next from Tomassini v. FCA US LLC, 21-2785. Good morning, Your Honors. May it please the Court. My name is Stephen Dunwoody. I'm here on behalf of FCA US LLC here this morning. One of the fundamental disputes in this case and what we contend that the district court overlooked, at least in part of its findings here, is the fact that the attorney fee issue in this case and the award was based on a contract. The fee award here is not based on a prevailing party under Section 349, as Apelli has claimed in its response brief, and as it impacts some of the analysis that the district court did. So the contract here came about by reason of an accepted offer of judgment. And that accepted offer was $2,000 for Mr. Tomassini plus costs. Those are not in dispute here on this appeal. And that offer was also for reasonable attorney fees related to the prosecution of Tomassini's individual claim only. And didn't Judge D'Agostino go through at some significant length the billing records? She eliminated those records that seemed to indicate an overlap between Mr. Tomassini's individual claim and the class claims, any work that overlapped. She cuts it by the requested amount of attorney's fees by a set amount that corresponds to a percentage. Didn't she go through all that? And isn't the standard of review and abuse of discretion is pretty good? She had a significant amount of discretion. And you're asking us to really, in effect, reexamine every bill? Your Honor, I think that cuts across several points that are at issue in this appeal. So first I will just start with the standard of review. So as we've argued in our brief, because this was an attorney fee award under a contract, this Court has said that in terms of what is awardable under the contract is subject to de novo review. Because the appellee here is only entitled to — So it's de novo review because it's a contract, right? But the contract is invoking a concept of reasonable attorney's fees on which there's a lot of case law. I mean, is it not reasonable for the district court or for us to understand that phrase in light of how it's used in the case law? Yes, Your Honor. So in terms of the de novo review, we start with what is awardable under the contract. And you are right. So we go to what is a reasonable fee for the individual claim only. And you're right, Your Honor, that Judge D'Agostino did review these records, partly because plaintiff here made no showing of the 770 hours. One of those hours were actually related to the individual claim only. So they submitted — Well, then didn't the — I mean, if you go through the affidavits from all the different plaintiff's attorneys, they all say they've eliminated the hours that aren't related to the individual claim. And then the Court went and said, well, no, you missed some more. Here's some more. But at least the ones that they reported to offer were already culled from presumably a much bigger number of hours that would have represented the classwork. Well, the appellee tells us exactly in his brief what they did. They eliminated those hours that solely were related to class certification. They did not submit those hours that were solely related to his individual claim only, which is what was required under the contract. And so, yes. Maybe what I have to get my head around is you're bringing up a case that involves your individual damages and maybe the individual circumstances of your injury. But in order to pursue it, forget the class, you're still going to have to develop expert testimony. You're still going to have to understand the manufacturing of this particular valve stem, et cetera, et cetera. Is it your position that any of the investigative and litigation time related to developing the liability aspect of his individual case is off the table because that same liability work can also support the class? Well, Your Honor, that is what we're saying. This is his individual claim only. So to the extent that those efforts overlapped, that's not the agreement. The agreement wasn't for things that benefited both the individual claim and the class claim. Well, I guess that's a question of interpretation, right? It says related to his individual claim and has only in parentheses, right? Yes. So you can understand that to mean related to his individual claim only in the sense that not related to the class, not things that are just class certification. Or I guess what you're saying is things that are related to his individual claim and have no implications for the class certification. Is that right? Yes, Your Honor. That's how you read it. So that means that even when they're working on his individual claim, I mean, it's obvious they spent a lot of time on his individual claim before the denial of class certification because they thought he was going to be the lead plaintiff in a class action, right? Well, Your Honor. But you're saying because they spent time developing his individual claim against the backdrop of hoping for a class action, none of that should count. That is, Your Honor. When they said individual claim only, they meant only the hours that occurred after class certification was denied. Well, yes. If you look at the record, Your Honor, it indicates that so discovery here was bifurcated. So this case went on for years where plaintiff was trying to get a class certified. And then after that, he announced that he's going to go forward with his individual claim. He requested a new period of discovery for his individual claim only and the case was going to go to trial based on his individual claim only. So the contract here didn't say work geared towards, you know, your individual and class claim. It was work for his individual claim only. So even before the denial of class certification, when they prepare Mr. Thompson for deposition of the print or something like that, right? That's one of the things that they go for. That is related to his individual claim because he's going to talk about what happened to him, right? But you're saying that still shouldn't count because he was doing that in the expectation that he'd be representative of a class. We did not argue that in our papers, Your Honor. So his deposition, I think — That's what you're saying now. But so to say he made that answer. No. We are not contending that part of his complaint was his individual claim only. Part of his deposition was his individual claim only. Part of his opposing summary judgment was individual claim only. What Judge DiAgostino did, though, when she looked at these hours and she cut 363.9 hours, there's inconsistencies in what she did. In addition, she didn't disallow those hours that she found were not for his individual claim only. She gave plaintiff partial credit for those hours. So she found that 363.9 hours were not for his individual claim only. She didn't disallow those hours like we contend she should have. Well, the sum of the hours flagged by the court is 363.9. This constitutes 46.8% of the 775 filled by plaintiff counsel. That's exactly the — that's 46% is the reduction she took. Are we fighting about that 0.8% between what she cut and what she found was not exclusively for Tomasini's claim? No. But the problem with that approach is so one — with that approach applying just the 46%. So they're getting partial credit for hours that were not for the individual claim only. And if you look at the rates — They're not getting any credit for any of the claims that she went through and put in her little chart that said it's either too vague or it's not exclusively his claim, right? They're not getting any credit for those. They are. Because the way she does the calculation after that, she finds that 46% of this load star is not for the individual claim only. But through the 363.9 hours. But she doesn't disallow those 363.9 hours and then apply a percentage reduction to what's left. But if she had done exactly — gotten the exact same result by knocking off 363.9 hours and saying this is the load star, and I find no basis to further reduce it because we've already knocked out all the stuff that needs to get knocked out in reducing the hours, wouldn't we be in exactly the same place? We wouldn't. Because mathematically some of those hours that were disallowed were at higher rates. So we don't end up at the same place. Okay. And also she didn't make that finding. She made that finding for all of these hours there was excesses, there was vagueness. Because she applied the reduction to all the hours. So had she disallowed the 363 like we contend she could have, and then applied a reduction because she found excess, vagueness, and unreasonableness in all of the hours. Well, the vagueness was already accounted for in those hours, right? One of the two tables that comprised the 363 was the vagueness. So you couldn't double dip on that. You'd either have to throw out the hours like you're proposing or you'd have to work them into your percentage reduction. But you wouldn't. You'd probably have a reversible error to do it twice, right? Right. But she did make findings as to the hours as a whole. And maybe it's not the 46, but she made findings. So there had to be, there should have been some reduction in what was left to account for those factors as well. Haven't we said that district parks don't need to do this with exactitude? So she thinks that about 46% were devoted to the individual claim. Why wouldn't an across-the-board reduction like that be consistent with what we've said is appropriate? Well, because what effectively has happened is the plaintiff, the appellee here, is getting compensated for hours that are clearly not within the contract. It's partial compensation. It's more compensation than they were entitled to. And the other thing that I didn't want to get lost in my argument, and it's certainly in the brief, is you brought up reasonableness, Your Honor, and just the lodestar itself isn't the only reasonableness factor that the court has indicated applies to these types of disputes. We have whether or not the fee is a reasonable relationship to what a reasonable-paying client would pay. We have proportionality factors. Can I ask about that? It does seem like we have these earlier cases that say that there's a general rule that it's not reasonable to give an award that exceeds the amount involved in litigation, but then in later cases we've said there's no proportionality requirement and sometimes the fees will exceed the amount. How do we reconcile those two approaches? Like, is there still a rule that you can't have fees in excess of the amount in the litigation? Well, and I think the way that the appellee has argued it here, and I think the distinction, if you look closely in the case law, is under certain statutes. Like, for instance, 349, the plaintiff here has relied heavily on that, that the courts have done away with the proportionality rule in Section 349. What does the contract say? The contract says a reasonable fee related to the individual client. Does it cap it otherwise? No, Your Honor. There is no cap, but when you look at it. Our statute here, we've got a contract that does not cap the amount, that does not on its face include a proportionality requirement, and we have a district court judge, as I said at the very beginning of this, who went through, read the contract, read through all of the billing records, and we throw this colloquy with both of my colleagues in your answers, and I just don't understand how we can really put ourselves in a position to go, you're asking us on a de novo basis to review the same billing records. And as Judge Manasci said, I think our cases demonstrate that we don't require exactitude. But the cases do, Your Honor. I would say that this is not reasonable under the factors and under the different tests that are outlined. The reason why it's not reasonable is because you're saying it's a departure from what the contract said. Is it because it's out of proportion to the amount that he got as an award on the individual claim, or is it because she clearly included hours that were not related to the individual claim only, because you're saying it has to be the individual claim to the exclusion of the class action as opposed to a kind of mixed work. Is that right? Well, in our briefing, Your Honor, I think we've claimed a couple different errors. One, what she did in terms of not totally disallowing the hours that were not what admittedly and that she found were not related to the individual claim only was error. But there's also, once you come up with that lodestar, you then have to apply the reasonableness test. And the contract uses the word reasonable, and if we look in the case law in this circuit. And that would involve proportionality between the fees and the amount of litigation. Proportionality is one test that we've cited. You have to look at the case law to see what those reasonableness tests are. How do courts in this circuit determine a reasonable fee? And that is subject to an abuse of discretion standard overview. I believe so, Your Honor. When we're talking about the reasonableness, it would be. Well, you said since we're determining a contract, it should be de novo. The, what is reasonable, what is included under the contract? What is a reasonable claim for the, what is a reasonable fee for the individual claim only? Under the contract would be de novo review. I agree, Your Honor. But when you're talking about the other side, the reasonable test. Under normal circumstances. But I think, again, because we're in a contract, it's de novo review. It's de novo review if we think that it's contrary to what the contract says. But then if we think that the contract is invoking, you know, the case law or the kind of phrase in the law, then maybe those two things are not so easily separate. And that's possible, Your Honor. But if you look at what Judge Agostino did here, too, she didn't apply these tests, too. She just, she didn't apply them at all. And so there, I just wanted to make sure the Court was aware there were three different tests that we've invoked. You know, one we talked about is the proportionality, but we also have the reasonable paying client test and the degree of success test. So these are tests in the circuit courts use to determine what is reasonable. Are they tests or are they factors, discretionary factors that a court can look at to make adjustments? In some cases, we say to the load star. In some cases, we say to the inputs that generate the load star. They are tests or factors that bear on what is a reasonable fee. There's nothing because you have to go through each of them in every case. That is right, Your Honor. Why don't we hear from your friend on the other side? And we'll reserve two minutes for that. Thank you, Judge Lowy. It's my privilege to appear here this morning. My name is Elmer Albertich III. Obviously, I represent Mr. Tomasini and, to a greater extent, myself and my colleagues who successfully litigated Mr. Tomasini's individual case. I'm going to start off by making an important point that was raised by Judge Robinson when she questioned Mr. Dunois about the nature of Mr. Tomasini's claim only. Mr. Tomasini's claim was an unfair and deceptive trade practices claim. In order to prosecute Mr. Tomasini's unfair and deceptive trade practices claim, a substantial amount of discovery that was taken earlier was going to be relied upon to prove that case at trial. Mr. Dunois talked about the posture of this case. Well, he left out one important point. The plaintiffs were prepared to try this case. We made it clear to the defendants, we're going to try this case. Only then, after first they tried to ram some sort of, you know, backdoor settlement proposal to us by depositing funds into the court, did they then make the Rule 68 offer, a Rule 68 offer that they styled. This was the plaintiff's argument. This was FCA's document, not generated by the plaintiff, with no input from the plaintiff. And it talks about the rule 68 offer, and it talks about the fact that it's, you know, a pretty good argument. I suppose, though, if the argument is you can include the fee incident to building Mr. Tomasini's case, it would have just said that, and that the insertion of the thing that the insertion of only added. My understanding of that was to eliminate, you know, the effort made to certify the class. There was also a separate plaintiff, Thomas Homerick, who was involved in the case, and we tried to amend to include him, and there were some subsequent litigation about him. He was deposed. So in that parenthetical, to me, reading it as the lawyer who filed that document in the court together with an acceptance of the rule 68 offer was the proof that was going to be presented for Mr. Tomasini during trial. And importantly, in that document that Chrysler filed, it talks about reasonable attorneys' fees. Reasonable attorneys' fees, and this is quoting from the case of Diaz v. Paragon Motors, which was provided in our briefing and was cited by this Court with approval in Barclay v. Olympic Mortgage, is, quote, and this is from page 9, 2007 U.S. District Court Lexis 73-230, page 9, the presumptive reasonable fee award, or LODESTAR, is used to make a fee determination in cases concerning claims of general business law, section 349. So when I read reasonable attorneys' fees, I read reasonable attorneys' fees under the law. If Mr. Dunois wanted to put some additional language into that to make things clear, that was on him, not on the plaintiffs. You don't get to draft something up and then show up later and say, well, it really means something else. It doesn't have the comment. It's a matter of reality. I mean, if you had litigated this case from the outset, knowing that there was not going to be a class certification and you were only trying Mr. Tomasini's individual claim, you would not have spent $125,000 worth of effort on developing that case, would you have? That's not accurate, Your Honor. And that point was made very clear, and that's part of the materials that the FCA excluded from the so-called joint appendix, where that issue is talked about in the briefing before the district court. We were going to try this case no matter what. That was made very clear to Mr. Dunois. And certainly there is, you know, there was a lot of effort on class certification and all sorts of, you know, briefing on experts and that type of thing. So Mr. Tomasini had to replace the left tire valve stem for $128 and the right tire valve stem for $13.50, right? Does it make sense that you would spend $125,000 worth of effort? In light of the proof that we had here, absolutely. And the reason that we would is because of what the court will find in the appellate's appendix, and I go from page 54 to 58, the level of absolute sheer lack of caring that this company showed toward Mr. Tomasini and others who purchased this vehicle is something that you haven't seen really in product liability cases since the 60s. There's a calculated decision made by FCA U.S. They knew these valve stems have a problem. They knew these valve stems were causing safety issues, that people were driving down the highway when the valve stems failed in an emergent situation having to pull over, and they made a calculated decision of, eh, it's going to cost us $300 to $400 million. So initially, we've got a service advisory here where we're going to replace these valve stems for our customers. And instead, because it's going to cost so much money, eh, let the customers go on their way. We're not going to tell them about it. We're not going to tell our dealers about it. We're going to actively conceal it. We're not going to tell our customer service reps when people call in to the care system. We're not going to tell them either. Forget it. It's going to cost too much money. So Mr. Tomasini would have undertaken the expense of $125,000 worth of attorney's fees because of society's interest in exposing the malfeasance of the defendant. Is that right? No. Under the general business law, the defendants, and there's plenty of case authority about this, the defendants are responsible.  And the expectation that they'd have to pay for the attorney's fees. The claim was under general business law 349, and there's attorney fee shifting statutes, and it's no different than any other fee shifting statute. Section 1983 is the same way. There are plenty of cases where there's a verdict of $5,000 or $10,000 in the Section 1983 case and a substantial award of attorney's fees afterward because the Congress of the United States are here, the New York State Assembly has decided that it's important to vindicate these rights. And in order to do that, we're going to give people an opportunity to shift the fees. So this is no different than the Truth in Lending Act, the Fair Debt Collection Act. But if in fact the claim is worth $2,000, if that's the harm that's done to a person, I mean, just you understand the intuition that it does not seem reasonable to spend $125,000 vindicating the $2,000 claim. It's easy to sit here now and say that. But when you're in the middle of the Battle of the Somme, you know, in World War I where it's war by attrition, that's what this case was. This case was war by attrition. And there was a lot of time spent, and Judge D'Agostino pointed to, you know, directed blame at both sides. There's a lot of time spent here feuding over things that really didn't need to be that way. But that's not the standard that this Court looks to when deciding a lodestar. The standard is, hey, what's going on at the time? Is this expenditure reasonable or not? Well, I guess that's my question. So we have these early cases that say that there's a general rule that it's not reasonable to award fees that exceed the amount involved in litigation. But then we have later cases that talk about no proportionality. So how do you reconcile those? My understanding is that in these earlier cases, we're talking about situations where you have a commercial – at least one of the cases I read. We have a commercial contract. And so you have in that commercial contract between two large corporations, you have a fee shifting. Hey, if we have to sue you under the contract, you have to pay our attorney's fees. And the Court considered these issues in that context. It did not consider them in the context of statutory – statutory direction about certain areas that the legislatures of the United States feel are important. And one of those is the general business law and unfair and deceptive trade practices. Those cases that Mr. Dunlop talked about, they're not general business law Section 349 cases. They're not unfair and deceptive trade practices cases. Those are commercial litigation between two parties feuding over a contract, and the Court said – and then one party wins and comes in and says, oh, you owe us all these attorney's fees. So what's the difference between those two contexts? There's just a greater public interest in the vindication of the rights, and so therefore the understanding of what a reasonable attorney's fee would be is different? Yes. Absolutely. That's where this all – that's where all this comes from. And what you're saying is that the New York – I think what you're saying or arguing or suggesting is that the New York State legislature, in the context at least of Section 349, has not imposed a proportionality requirement. That is correct, and neither has this Court in its prior decisions, neither have other Federal courts who have considered this exact same argument. You need to – in order for lawyers to get involved in these kind of cases – and, you know, a perfect example would be, you know, a defective – a lemon law case. You know, if someone buys a car and they have defective brakes and maybe it costs $5,000 or $7,000 to fix those brakes, a lawyer is not going to get involved in that case unless they have an incentive to do so. And the legislature has given that incentive. The legislature thinks that this is important and has given that incentive to people to bring these kind of cases. It's a private attorney general type of scenario. Yes. And if the rule that Mr. Dunois is espousing in front of this Court is applied here, it's going to be applied – attempt to be applied elsewhere in cases involving federally protected civil rights, in cases involving truth in lending, Fair Debt Collection Act, warranties under the Magnuson-Moss Act. I could go on. I'm sure there are a number of other statutes with these sort of fee-shifting provisions where this – this argument will be tried as well. That's not the law in this circuit. The law in this circuit is reasonable attorney fee is the lodestar. The plaintiffs went through this petition at my direction and removed hundreds and hundreds and hundreds of hours before this petition was even filed. Took them out. And took them out because they weren't part of Mr. Tomasini's – the case we would put on for Mr. Tomasini individually. They were taken out. So we already did a self-selection of removing our hours. And then on top of it, Judge Stagastino came in, you know, with the – with the limited – with the already limited application, came in and said, I'm cutting 46 percent. The plaintiffs didn't like that decision either. But that was well within her discretion. And that's the standard here is abuse of discretion. When the plaintiffs presented their original numbers, you thought that the petitions had been called of non-qualifying entries, yet proposed a 35 percent discount from the lodestar calculation. Yes. What was the rationale for that? And why did that disappear when the court took out the hours that weren't in fact qualifying? Well, the court cut – cut more from our petition than 45 percent. But the rationale was – was to be reasonable. All right? Was just to say, you know what? Probably some of this you could say was intermingled. We're trying to be reasonable. We tried to be reasonable to resolve the case in the first instance in the district court. That's in the paperwork as well. When the Rule 68 offer was – was proposed, we asked to have a settlement conference, which basically were – you know, went – we weren't even able to get it scheduled, despite my personal efforts repeatedly to do that. It was to be reasonable. I mean, this is – you know, this is an onerous proceeding for a district court to handle, to go through all these records. That's why the court allows for this for – for – it doesn't necessarily have to be precise. You can have percentage reductions and that type of thing. We're being reasonable. All right. Thank you so much. Well, Mr. Bello. Your Honor, this is not a fee-shifting statute case. This is not a Section 349 case. The attorney fees here were via a contract. And that's – so these dangers that Mr. Keach talks about in terms of if this court were to limit this fee and actually apply the reasonableness factors, those factors don't apply. I agree. When you have a fee-shifting statute, there are different incentives and different – Would it have been possible in this contract to include a proportionality requirement, to include a cap on the amount of attorney's fees, to include any number of mechanisms explicitly in the contract that I think you're asking for? Yeah. We included the word reasonable, Your Honor. Yes. But would it have – that's not my question. Yeah. Would it have been possible in this contract to include these other requirements explicitly? Your Honor, it would have been possible to – it was an offer of judgment. So it would have been possible to draft that offer with any language. So you include the word reasonable, but I think you just said that when courts interpret the word reasonable in reasonable attorney's fees in the context of some So why would the word have a different meaning in the statutory context than in this contractual context? Because those statutes have specific goals in mind. It's like the private attorney general. But we are not dealing with that under the agreement here. Is one of those statutes, the New York Business Law, 359 or whatever it is? 349. 349? Is that one of the statutes that has that goal in mind? That has a fee-shifting provision here. If we're looking at a contract where there's a settlement of that kind of a claim and an agreement by the defendant to pay reasonable attorney's fees, why wouldn't we look to the way reasonable attorney's fees would be awarded in that kind of a case? Because we were very clear in these negotiations that plaintiffs were not going to be deemed the prevailing party under 349. It's not in the language, but that was one thing that the parties considered, is whether or not they would be allowed to claim fees as a prevailing party under 349. And ultimately, this was a back and forth. We had served an offer of judgment before this one was accepted, and Mr. Keech and his team told us what revisions we would need to make in order to make it acceptable. But what we arrived at was a reasonable fee related to his individual claim only. And we've pointed out in our briefing, again, what factors, what tests, what issues does this court and courts in this circuit view when determining what's reasonable? And I just want to read a short passage, and I'll end with this, unless there are other questions. It's from the Safeco V.M.E.S. case cited on page 28 of our brief. It says that you start with the lodestar, which Judge D'Agostino did here. And then it says, you then adjust the lodestar amount determining what a reasonable paying client would be willing to pay based on case-specific considerations. It's not what I would spend if I was going to have to, or if I had the ability to pass these fees on to my opposing counsel. It's what would a reasonable paying client be willing to pay for a $2,000 individual claim. Thank you very much. Thank you, Your Honors. Move to a decision.